**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| J C BERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.  CIV-11-34-D |
| | ) |
| OKLAHOMA STATE OF, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights.  United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Currently before the Court is the Defendants' motion to dismiss/motion for summary judgment.  Plaintiff has filed a response to the motion, and thus, the motion is at issue.  For the following reasons, the undersigned recommends that summary judgment be granted to the Defendants.

## I. INTRODUCTION

Plaintiff names as defendants the State of Oklahoma; the Oklahoma Department of Corrections (ODOC); Justin Jones, the Director of ODOC; Mike Addison, the Warden of Joseph Harp Correctional Center; Sam Preston, a unit manager at Joseph Harp Correctional

Center; and Lori Kill, a case manager at Joseph Harp Correctional Center.[1]  Complaint, 1-2.[2]

In Count One of his two count complaint, Plaintiff claims that Defendants violated the Ex Post Facto Clause and the Eighth and Fourteenth Amendments of the United States Constitution in requiring him to pay court costs which were not included in his judgment and sentence.  Complaint, 3.  In Count Two, Plaintiff contends that Defendants conspired to fraudulently extort money from him by fabricating court documents to show that he owed court costs to Muskogee County and that these acts violated the Eighth and Fourteenth Amendments of the United States Constitution.  Complaint, 3.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party.  Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma ex. rel. Department of Mental Health, 875 F.2d 263, 264 (10th Cir. 1989).  A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

---

[1] In the complaint, briefs, and special report, Defendant Kill is referred to as both "Lori Kiel" and "Lori Kill."  The undersigned has chosen to refer to her as "Lori Kill" in accordance with the affidavit she provided to the Court.  Special Report, Ex. 3, at 1.

[2] The pages of the complaint are not numbered, and thus, the undersigned has inferred page numbers.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement. Anderson, 477 U.S. at 256. Rather, Federal Rule of Civil Procedure 56 "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotation marks omitted).

### III.  UNDISPUTED FACTS

Based upon the Complaint, the Special Report,[3] and the evidentiary material appended to the various filings in this case, the following material facts are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff. Immaterial facts and facts not properly supported by the record are omitted. Some of the undisputed facts will be addressed in a somewhat abbreviated form in this section and will be more fully described

---

[3]The Special Report has been treated as an affidavit. See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (explaining role of a special report in summary judgment proceedings).

in the context of the issues to which they pertain.

Following Plaintiff's conviction of murder in the first degree, after a former felony conviction, he was sentenced to life imprisonment without parole. Complaint, 2; Special Report, 4. The judgment and sentence entered on March 20, 1991, reflected that Plaintiff was to pay the cost of the prosecution, but the amount was left blank. Special Report, Ex. 3, at 2. On April 11, 1991, he was received into ODOC custody, and on July 3, 1992, he was transferred to Joseph Harp Correctional Center, where he remained at all times relevant to the issues raised in this action. Special Report, 4. Plaintiff has subsequently been transferred to the Oklahoma State Reformatory in Granite, Oklahoma.

ODOC procedures require prison staff to complete an offender financial responsibility plan/instruction utilizing the inmate's judgment and sentence, other court documents, and any other pertinent information. OP-060203(II)(A)(6); OP-090131(I)(B)(1). The purpose of this plan is to enable inmates to contribute money to their financial obligations while also teaching them to manage their money effectively. OP-090131. Prison staff are required to occasionally review the plan for any modifications. OP-060203(II)(A)(6)(b); OP-090131(I)(B)(2). Prison staff are also required to withhold 10% of the inmate's earnings to pay for state criminal court costs. OP-090131(I)(B))(1)(a).

Pursuant to these procedures, Defendant Kill reviewed Plaintiff's judgment and sentence which did not indicate the amount of court costs Plaintiff owed. Special Report, Ex. 3, at 1-2. Thus, Defendant Kill checked Plaintiff's on demand court records located at www.odcr.com which showed that Plaintiff owed $3123.06 to the Muskogee County District

Court clerk's office as of December 31, 2002. Special Report, Ex. 3, at 1, 3. Defendant Kill then submitted an offender financial responsibility plan to the trust fund office at Joseph Harp Correctional Center on July 6, 2010, for mandatory payment of $3123 to the Muskogee County District Court clerk's office. Special Report, Ex. 3, at 1, 4.

   Plaintiff submitted a request of staff on July 19, 2010, to Defendant Preston in which he accused Defendant Preston of fabricating court documents to "extort" money from him and he requested that the "extortion" of his funds be stopped immediately. Special Report, Ex. 2, at 1. Defendant Preston replied that court documents indicated that Plaintiff owed $3123.06 in outstanding court costs to Muskogee County and that ODOC procedures OP-060203 and OP-090131 made effective on May 26, 2010, and May 28, 2009, respectively, required the prison to withhold 10% of his earnings to pay those court costs. Special Report, Ex. 2, at 2-3. Plaintiff then sent a grievance to Defendant Addison on August 10, 2010, claiming that his judgment and sentence showed that he did not owe any court costs and accusing Defendants Preston and Kill of fabricating court documents to "extort" money from him. Special Report, Ex. 2, at 5-6. Plaintiff also alleged the ODOC procedures listed by Defendant Preston were not applicable to him and their application constituted an ex post facto violation. Special Report, Ex. 2, at 6. Defendant Addison denied Plaintiff's grievance, stating that his claims of fraud and extortion were absurd and would not be addressed. Special Report, Ex. 2, at 7. Defendant Addison also noted that the form Defendant Preston provided Plaintiff was sufficient proof that Plaintiff owed court costs and prison staff were required to comply with the trial court's order. Special Report, Ex. 2, at 7. Defendant

Addison then noted that Plaintiff was responsible to contact the appropriate court clerk if he felt that the above court costs did not apply to him. Special Report, Ex. 2, at 7. Finally, Plaintiff filed a grievance appeal on August 24, 2010, and Debbie Morton, Defendant Jones' designee, denied that appeal on August 30, 2010. Special Report, Ex. 2, 8-9.

Nothing in the complaint, briefs, or special report, shows that Plaintiff ever contacted the Court Clerk for Muskogee County regarding the above court costs. On September 30, 2010, Plaintiff filed a motion for a temporary restraining order and preliminary injunction with the District Court for Cleveland County, and on October 28, 2010, he filed a motion for summary disposition. Case No. CV-2010-686, District Court for Cleveland County, Docket (motions attached to Plaintiff's brief in support of his complaint). The court denied Plaintiff's motion for summary disposition on January 19, 2011, for failing to issue summons on Defendants. Case No. CV-2010-686, District Court for Cleveland County, Docket. Id. It appears that nothing else has occurred in that case since then, and that the case is still pending. Id.

## IV.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants raise seven propositions in support of summary judgment. The undersigned agrees with Defendants that summary judgment is appropriate for the State of Oklahoma and the ODOC based on Eleventh Amendment immunity and summary judgment is appropriate for the individual Defendants due to Plaintiff's failure to prove a constitutional violation. Accordingly, the undersigned has not discussed Defendants' remaining propositions.

## A. ELEVENTH AMENDMENT IMMUNITY

Defendants first argue that the both the State of Oklahoma and ODOC are immune from suit under the Eleventh Amendment. Defendants' Motion to Dismiss/Motion for Summary Judgment, 4-6. Absent a specific waiver of immunity or express abrogation of the state's immunity by Congress, "[n]onconsenting States may not be sued by private individuals in federal court." Opala v. Watt, 454 F.3d 1154, 1157 (10th Cir. 2006) (quotations omitted). Here, the State of Oklahoma has expressly refused to waive its Eleventh Amendment immunity to suit in federal court. Okla. Stat. tit. 51, § 152.1. Furthermore, the United States Supreme Court has held that § 1983 does not abrogate state sovereign immunity. Will v. Michigan Department of State Police, 491 U.S. 58, 66 ( 1989). Finally, ODOC is an arm of the State entitled to the same Eleventh Amendment immunity. Eastwood v. Department of Corrections, 846 F.2d 627, 631 (10th Cir. 1988). Accordingly, the undersigned finds that both the State of Oklahoma and ODOC are entitled to summary judgment as both are immune to suit under the Eleventh Amendment.

## B. FAILURE TO PROVE A CONSTITUTIONAL VIOLATION

The individual Defendants contend that Plaintiff has failed to prove that his constitutional rights have been violated and he has failed to allege facts sufficient to constitute a conspiracy. Defendants' Motion to Dismiss/Motion for Summary Judgment, 11-13. The undersigned agrees and will discuss Plaintiff's counts separately below.

### 1. Count One: Ex Post Facto/Due Process Violation

Plaintiff contends that requiring him to pay $3123.06 in court costs to the Muskogee

County District Court clerk's office amounts to an ex post facto violation, cruel and unusual punishment, and a deprivation of his due process rights. Complaint, 3. In support, Plaintiff points to the judgment and sentence entered on March 20, 1991, which he claims does not indicate that he was required to pay any court costs as a result of his conviction. Plaintiff's Brief in Support, 6; Special Report, Ex. 3, at 2. Plaintiff also argues that ODOC procedures OP-060203 and OP-090131 came into effect many years after his conviction and judgment and sentence were entered. Plaintiff's Brief in Support, 7. Thus, he claims that application of those procedures to authorize the taking of money from his account to pay court costs violates the Ex Post Facto Clause and his due process rights under the Fourteenth Amendment. Plaintiff's Brief in Support, 7, 9.

The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." Weaver v. Graham, 450 U.S. 24, 30 (1981). The controlling inquiry is "whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Department of Corrections v. Morales, 514 U.S. 499, 509 (1995). Because no mechanical formula exists for determination of whether a new law or regulation sufficiently increases punishment to be considered ex post facto, the Court must determine on a case-by-case basis whether the change "produces a sufficient risk" of greater punishment. Raymer v Enright, 113 F.3d 172, 174 (10th Cir. 1997).

Application of ODOC procedures OP-060203 and OP-090131 to Plaintiff's 1991 conviction did not result in an ex post facto violation because their application did not

increase the measure of punishment. At the time Plaintiff was convicted of the underlying crime, Oklahoma required criminal defendants who stood convicted to pay the court costs associated with their convictions. Okla. Stat. tit. 28, § 101; Ex Parte Clemmons, 225 P. 184, 185 (Okla. Crim. App. 1924) (applying prior version of § 101 and finding "its provisions relating to fines and costs automatically become a part of every criminal judgment imposing a fine or imprisonment, or both" without any need on the part of the trial court to include such fines and costs in its judgment). See also Webb v. Maynard, 907 P.2d 1055, 1060 (Okla. 1995) ("[F]ines and court costs are adjudged a part of the punishment upon conviction."). ODOC policies OP-060203 and OP-090131 did not impose any additional costs on Plaintiff. Instead, those policies merely set forth standards for the collection of Plaintiff's earnings for the repayment of court costs Plaintiff already owed under state law, see OP-060203(II)(A)(6); OP-090131(I)(B), and ODOC's collection of Plaintiff's earnings to pay his court costs is authorized by Okla. Stat. tit. 57, § 549(A)(4), (5).

Plaintiff has also failed to show that he was deprived of his due process rights. For there to be a due process violation, Plaintiff must show that he has a protected property interest in the funds in his prison trust account by showing that Defendants' deprivation of those funds imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Clark v. Wilson, 625 F.3d 686, 691 (10th Cir. 2010) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)), cert. denied, 131 S. Ct. 2884 (2011). The Tenth Circuit has yet to decide whether a prisoner has a protected property interest in such funds, see id. at 691-92, and Plaintiff does not argue that he possesses such an interest.

Further, Plaintiff has failed to show a deprivation by these Defendants. Defendants did not impose court costs on Plaintiff. Rather, those costs were imposed by state statute. See Moncla v. Kelley, No. 11-3078, 2011 WL 2784091, at *2 (10th Cir. July 18, 2011) ("[T]he state-court filing fee for the state district court was not a deprivation. These expenditures were not part of any sanctions imposed by the prison disciplinary process.").[4]

Finally, Plaintiff has failed to allege any facts which show or to otherwise argue that Defendants' actions subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Accordingly, the undersigned finds that Defendants are entitled to summary judgment on Count One of Plaintiff's complaint.

### 2. Count Two: Conspiracy

In Count Two, Plaintiff argues that Defendants conspired to use a "fraudulent[,] fabricated court document" to show that he owed outstanding court costs to the Muskogee County District Court clerk's office in violation of the Eighth and Fourteenth Amendments. Complaint, 3; Plaintiff's Brief in Support, 9, 11, 13. Defendants argue that summary judgment is appropriate on Plaintiff's Count Two claim because Plaintiff has failed to show a meeting of the minds sufficient to establish a conspiracy and because he has failed to show a deprivation of his constitutional rights. Defendants' Motion to Dismiss/Motion for Summary Judgment, 13.

A conspiracy claim under § 1983 requires a plaintiff to allege "specific facts showing

---

[4]This unpublished disposition is cited pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

an agreement and concerted action amongst the defendants." <u>Tonkovich v. Kansas Board of Regents</u>, 159 F.3d 504, 533 (10th Cir. 1998). A plaintiff must also allege facts showing an actual deprivation of a constitutional right. <u>See</u> <u>Thompson v. City of Lawrence</u>, 58 F.3d 1511, 1517 (10th Cir. 1995) (to prevail on § 1983 conspiracy claim, plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right."). Further, while a plaintiff's allegations are accepted as true when considering a motion for summary judgment raised by the defendants, the plaintiff must nevertheless assert factual allegations sufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." <u>Durre v. Dempsey</u>, 869 F.2d 543, 545 (10th Cir. 1989) (per curiam).

Plaintiff has failed to show a conspiracy to support his Count Two claim. He predicates his conspiracy claim on the chain of command at Joseph Harp Correctional Center. Plaintiff's Response, 12. Plaintiff alleges that Defendant Kill had no authority to pursue any legal or illegal action without the consent and agreement of Defendant Preston and that Defendant Preston could not act without the consent and agreement of Defendant Addison. Plaintiff's Response, 12. From this, he asserts that Defendants conspired to deprive him of his constitutional rights. Plaintiff's Response, 12. These allegations do not show an agreement or concerted action to deprive Plaintiff of his constitutional rights through the use of a fabricated court document. Additionally, Plaintiff has failed to show that Defendants fabricated the relevant court document. Instead, Plaintiff relies on conclusory

allegations to support his conspiracy and fraudulent court document claims, which are insufficient to overcome Defendants' motion for summary judgment. Finally, as stated above, Plaintiff has not shown a deprivation of his constitutional rights. Accordingly, the undersigned finds that summary judgment should be entered in favor of the individual Defendants on Count Two of Plaintiff's complaint.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that the Defendants' motion for summary judgment be **GRANTED**. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by November 8, 2011, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 19th day of October, 2011.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE