IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| J.C. BERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-11-34-D |
| ) | |
| STATE OF OKLAHOMA, ) | |
| DEPARTMENT OF CORRECTIONS, ) | |
| DIRECTOR, JUSTIN JONES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

This matter comes before the Court for review of the Report and Recommendation issued by United States Magistrate Judge Doyle W. Argo pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Judge Argo recommends that summary judgment be granted to Defendants. Plaintiff has filed a timely written objection. Thus, the Court must make a *de novo* determination of the portions of the Report to which a specific objection is made, and may accept, modify, or reject the recommended decision. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Plaintiff, a state prisoner appearing *pro se*, seeks declaratory and injunctive relief and damages under 42 U.S.C. § 1983 against the State of Oklahoma, Department of Corrections ("DOC"), Director Justin Jones, Warden Mike Addison, Unit Manager Sam Preston, and Case Manager Lori Kill[1] for alleged violations of his constitutional rights. Liberally construing his pleading, Plaintiff alleges that Defendants' application of departmental policies enacted after his sentence was imposed in 1991 increased the punishment for his offense by collecting court costs that were not included in the state court judgment. He claims that Defendants violated the *Ex Post Facto* Clause and his right of procedural due process. Plaintiff also claims that Defendants engaged in a

---

[1] This defendant's last name was spelled "Kiel" in Plaintiff's pleading and initial briefs, but has been corrected in the Special Report and subsequent filings.

conspiracy to fraudulently "extort" money from him that constituted cruel and unusual punishment and denied him due process. *See* Compl. [Doc. No. 1] at 3; Pl.'s Br. [Doc. No. 2] at 9.[2] Defendants filed a Special Report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), and moved for dismissal or summary judgment on numerous grounds.

In the Report, Judge Argo analyzes Defendants' motion as one for summary judgment, treating the Special Report as an affidavit, and finds two grounds raised by Defendants to be dispositive. Judge Argo first concludes that the State of Oklahoma and DOC are entitled to Eleventh Amendment immunity. Judge Argo then examines Plaintiff's claims in light of the facts shown by the record and concludes, for reasons explained in the Report, that Plaintiff cannot establish a constitutional violation or a conspiracy.

Although Plaintiff begins his Objection with a statement of facts, his statement does not appear to differ in any material respect from the facts found by Judge Argo. Briefly stated, Plaintiff was convicted of first-degree murder twenty years ago and sentenced to life imprisonment without parole. The written judgment entered in March, 1991, included a statement requiring payment of the costs of prosecution, but the amount of taxed costs was left blank. Plaintiff was received into DOC custody in April, 1991, and confined at the Joseph Harp Correctional Center (JHCC) at all relevant times. Pursuant to current DOC policy, each inmate must have a financial responsibility plan that enables the inmate to meet his financial obligations, including any obligation to pay criminal court costs. Defendant Lori Kill, a case manager at JHCC, prepared such a plan for Plaintiff in July, 2010. Because his criminal judgment did not state an amount of costs, Ms. Kill

---

[2] The Complaint also invokes Plaintiff's right to equal protection, but a violation of this right is not supported by factual allegations in Plaintiff's pleading or arguments in his supporting brief. Thus, Judge Argo has properly disregarded this conclusory allegation.

checked electronic court records, available through On Demand Court Records at www.odcr.com, and learned that Plaintiff's criminal case file in the District Court of Muskogee County reflected an assessment of costs in the amount of $3,123.06. Consistent with DOC procedures, Ms. Kill included this amount in Plaintiff's financial plan and submitted the plan to the JHCC trust fund office for mandatory payments to be made to the Muskogee County Court Clerk. Plaintiff was informed of these facts by a unit manager at JHCC, Defendant Sam Preston, in response to a request to staff. Plaintiff filed a grievance and completed the administrative process without relief. DOC took the position that its policies and procedures properly required Plaintiff to satisfy the court costs reflected in his criminal case record, and that Plaintiff should contact the court clerk if he believed the case record was incorrect.

Plaintiff did not contact the Muskogee County Court Clerk. Instead, Plaintiff's position, as stated in his Objection, is that the court clerk was required to notify him of any assessment of costs and he received no notice. Apparently, Plaintiff believes any assessment by the clerk was invalid or the electronic record is incorrect; he characterizes this record as "fraudulent and fabricated." *See* Objection [Doc. No. 36] at 2, 4, 11-14. Plaintiff initiated a civil action against Defendant Mike Addison, as warden of JHCC, in the District Court of Cleveland County in September, 2010, by filing a motion for a temporary restraining order and preliminary injunction. Plaintiff also filed a motion for summary disposition, asking the court to order JHCC officials to stop taking funds from his account to pay court costs. Plaintiff's motion was denied for failure to effect service. Plaintiff has taken no further action in that case, which remains pending.

**A.     Eleventh Amendment Immunity**

Plaintiff first objects to Judge Argo's conclusion that any claim against the State of Oklahoma or DOC is barred by the Eleventh Amendment. Plaintiff argues that a state agency may be required to comply with the Constitution under the "Ex Parte Young fiction." *See* Objection [Doc. No. 36] at 7. The *Ex parte Young* doctrine permits "an action against a state official seeking only prospective injunctive relief." *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011). Neither the state itself nor a state agency is a proper defendant in such an action. Accordingly, Judge Argo correctly concludes that the State of Oklahoma and DOC are entitled to summary judgment on this ground. However, because Eleventh Amendment immunity prevents the Court from exercising jurisdiction over Plaintiff's action against these defendants, the proper disposition is a dismissal for lack of jurisdiction. *See, e.g., Wagoner County Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1260 (10th Cir. 2009).

**B.     Constitutional Violation**

Liberally construing Plaintiff's Objection, he contends Judge Argo incorrectly finds that the facts do not support two violations of the Constitution: 1) a violation of the *Ex Post Facto* Clause; and 2) a violation of the Due Process Clause.[3]

   **1.     *Ex Post Facto* Violation**

Plaintiff asserts that Defendants' application to him of newly enacted DOC policies has increased the punishment for his offense and has imposed an additional punishment that was not

---

[3] Judge Argo also finds that Plaintiff has failed to present factual allegations or legal argument in support of any claim of cruel and unusual punishment under the Eighth Amendment. Plaintiff does not object to this finding, and thus further review is waived. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).

available at the time of his conviction and sentence. Plaintiff argues that taking money from him to satisfy court costs that were not assessed as part of his criminal judgment is a retroactive application of after-enacted legislation that violates the *Ex Post Facto* Clause. Plaintiff contends his case is similar to *Smith v. Scott*, 223 F.3d 1191 (10th Cir. 2000), in which the court of appeals found an *ex post facto* violation in the retroactive application of a substantive change in DOC regulations to the disadvantage of an incarcerated inmate. *Smith* is factually distinguishable, however, because it involved a retrospective change in regulations regarding earned time credits that had the effect of lengthening the prisoner's period of incarceration for his offense.

After careful consideration, the Court finds that Plaintiff's argument has a faulty premise. Plaintiff concedes that a statute, Okla. Stat. tit. 28, § 101, authorized the court clerk to assess costs of prosecution, but he takes the position, based on the 1991 judgment in his case, that no court costs were imposed as part of his criminal penalty and "there is no evidence of ascribed statement of court cost assessed, adjudged ordered or decreed . . . ." *See* Objection [Doc. No. 36] at 10. However, the cited statute, which predated Plaintiff's offense, expressly provides for a post-judgment assessment of fees and court costs, to be entered on the judgment docket and enforced in the same manner as a judgment. *See* Okla. Stat. tit. 28, § 101. The costs assessed in his case were entered on the judgment docket, as shown by the electronic case information available for the District Court of Muskogee County, which the Oklahoma Supreme Court has authorized to be made public. *See In re Public Access to Electronic Case Information*, No. SCAD 2009-92, 2009 WL 3260740 (Okla. Oct. 8, 2009) (to be published).

Another statute enacted before Plaintiff's offense, Okla. Stat. tit. 57, § 549, "permits the prisoner to discharge court costs . . . during incarceration." *See Webb v. Maynard*, 907 P.2d 1055,

5

1059-60 (Okla. 1995). By this statute, according to the Oklahoma Supreme Court, the legislature authorized DOC to apply prison earnings to the payment of enumerated expenses, including court costs, as a condition of permitting inmates to earn wages through prison industry and DOC's authorization "under § 549 is clear and unambiguous. While incarcerated, the funds earned by a prison inmate and deposited in his savings account may be withdrawn by the Department to pay the costs of prosecution, victim compensation fees, and other specified items as long as at least twenty percent of the inmate's earnings are paid to the prisoner upon his discharge from prison or assignment to a prerelease program." *Webb*, 907 P.2d at 1059.[4] DOC's financial responsibility policies simply implement this statute. Thus, they are not being applied retroactively to Plaintiff, and do not increase the punishment for his criminal offense.

For these reasons, and those fully stated in Judge Argo's Report, the Court finds that Plaintiff has failed to allege facts that would establish a violation of the *Ex Post Facto* Clause.

### 2. Due Process Violation

Plaintiff also asserts that Defendants' unilateral decision to take money from his trust account for payment of court costs constituted a deprivation of property without notice and adequate process.

Judge Argo does not address in his Report the issue of whether Plaintiff had a protected property interest in funds in his trust account because Plaintiff failed to argue this issue in his brief in opposition to Defendants' motion. Plaintiff seeks to correct this omission by argument in his

---

[4] Plaintiff argues that Oklahoma law at the time of his offense held that only the county where court costs were incurred in a criminal case was authorized to collect unpaid costs and a prison warden was not authorized to enforce the payment of court costs, citing *Galcatcher v. Page*, 437 P.2d 234 (Okla. Crim. App. 1968). The holding of this case was based on the proposition that § 101 did not apply to a prisoner until his release, but subsequent legislative enactments, including § 549, introduced the concept of paying court costs while incarcerated through wages earned from prison labor. *See Webb*, 907 P.2d at 1059.

Objection, stating simply that he "has a property interest in his trust account." *See* Objection [Doc. No. 36] at 10 (*Gillihan v. Shillinger*, 872 F.2d 935 (10th Cir. 1987)). The Court declines to consider this new matter raised for the first time in objection to Judge Argo's Report. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."). In any event, the court of appeals has recognized that the holding of *Gillihan*, on which Plaintiff relies, "is no longer good law" but has been abrogated by *Sandin v. Conner*, 515 U.S. 472 (1995). *See Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010). Other courts considering the issue have concluded that an inmate does not have a property interest in any amounts subject to mandatory deduction under § 549, such as court costs. *See Newbury v. Ward*, No. CIV-05-876-F, 2006 WL 1620300, *7 (W.D. Okla. June 6, 2006); *accord Shaffer v. Workman*, No. CIV-07-638-C, 2007 WL 2363294, *6 (W.D. Okla. Aug. 16, 2007), *appeal dism.*, 259 F. App'x 72 (10th Cir. 2007).

Moreover, to establish his claim, in addition to a property interest, "a plaintiff needs to demonstrate not only the possession of a protected property interest but also a denial of an appropriate level of process." *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011). Plaintiff presents no argument regarding whether he was denied an appropriate level of process for the deprivation of any property interest in his trust account. It is well-established that sufficient procedures for deprivation of a property interest may be provided by an adequate state post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *see also Gee v. Pacheco*, 627 F.3d 1178, 1194 (10th Cir. 2010). Plaintiff does not contend that he lacks any state-law remedy to challenge either the assessment of court costs or, more importantly here, DOC's mandatory deductions.

For these reasons, and those fully stated in Judge Argo's Report, the Court finds that Plaintiff has failed to allege facts that would establish a violation of the Due Process Clause.

**C.     Conspiracy**

Plaintiff's theory of his § 1983 conspiracy claim is that Defendants acted in concert to deprive him of constitutional rights. Plaintiff contends he has presented sufficient facts to show concerted action among Defendants, contrary Judge Argo's findings in the Report. The Court need not reach this issue because Plaintiff has failed to show the violation of a constitutional right, as required for a § 1983 claim.[5]

IT IS THEREFORE ORDERED that the Report and Recommendation [Doc. No. 33] is ADOPTED. Defendants' Motion for Summary Judgment [Doc. No. 28] is GRANTED as set forth herein. Judgment shall be entered accordingly.

IT IS SO ORDERED this 29th day of March, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff also argues in his Objection that Defendants conspired to violate state law. Federal subject matter jurisdiction in this case is premised on Plaintiff's § 1983 claims, and in light of the disposition of those claims, the Court declines pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over any state law claim that Plaintiff intended to assert.